Irene M. Reineck v. Commissioner. Oak Park Trust & Savings Bank, Trustee of E. F. Reineck Trust under Agreement No. 21567 v. Commissioner. Frederick M. Lee v. Commissioner. Winfield S. Hevenor and Lillian F. Hevenor, Husband and Wife v. Commissioner.
Reineck v. Commissioner
Docket Nos. 110776, 111009, 111224, 111225.
United States Tax Court
1943 Tax Ct. Memo LEXIS 298; 2 T.C.M. (CCH) 108; T.C.M. (RIA) 43236; May 19, 1943
*298 Daniel M. Healy, Esq., and Samuel E. H1IRSCH, Esq., for the petitioners. David Altman, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, J.: These consolidated proceedings involve deficiencies in income taxes as follows: Docket No.
Name
1936
1937
1938
110776
Irene M. Reineck
$2,243.02
$1,294.26
$2,343.27
111009
E. F. Reineck Trust
838.60
111224
Frederick M. Lee
4,368.78
5,195.70
9,041.60
111225
Winfield S. Hevenor and Lillian F.
Hevenor, Husband and Wife
1,349.56
1,529.12
2,930.49
In the deficiency contested in the proceeding entered to Docket No. 110776, respondent's position is that under section 162 (b) of the Revenue Act of 1936 the petitioner Irene M. Reineck is taxable as beneficiary or income distributed to her from the Trust in the amounts of $19,773.88, $13,402.06 and $20,859.38 for the respective years involved, 1936, 1937 and 1938. These amounts were the dividend payments received by the Trust during those respective years on the Reineck stock, less disbursements for trust administration during those years. The propriety of that action is the only issue. The deficiency, the correctness of which is contested in Docket No. 111009, *299 results from the Commissioner's determination that the E. F. Reineck Trust, petitioner therein, was taxable on the Commercial stock dividends received by the Trust in 1938 and not distributed, under section 161 of the Revenue Act of 1936, because of litigation involving all the taxpayers involved in this proceeding. The correctness of that determination is the only issue. Section 161 of the Revenue Act of 1936. Respondent apparently now concedes, in effect that the distributability of the Trust income was not affected by that litigation. In determining the deficiencies which are disputed in Docket Nos. 111224 and 111225, respondent has treated the Commercial stock delivered to Lee and Hevenor in the years 1936, 1937 and 1938, respectively, by the E. F. Reineck Trust because of credits against their stock accounts on the books of the Trust of the amount of dividends received by the Trust on the Reineck stock in those years, as compensation and taxable to the respective recipients in the amount of its fair market value, under section 22(a) of the Revenue Acts of 1936 and 1938. Respondent has amended his answers in these proceedings to raise the alternative issue that, in any event, *300 the petitioners in these docket numbers are subject to income tax on the pro rata amounts of the gross dividends paid by the Commercial Company to the E. F. Reineck Trust against which payments shares of stock were issued to them. These are the only issues in the proceedings entered to these docket numbers. All the returns of the respective petitioners for the various calendar years involved were filed with the collector of internal revenue for the First District of Illinois at Chicago, Illinois. The proceedings were submitted on a stipulation and certain exhibits. The facts are so found. Summarized, they are as follows: [The Facts] On January 10, 1930, E. F. Reineck, who died December 18, 1930, executed a trust agreement conveying to the Oak Park Trust & Savings Bank as trustee, 2,149 common shares of the capital stock of Commercial Wall Paper Mill, Inc. The material provisions of that agreement are as follows: WHEREAS the business of said company is highly specialized and to be successfully conducted requires executives of long experience in dealing with its peculiar problems; and WHEREAS Frederick M. Lee (hereinafter called "Lee") and W. S. Hevenor (hereinafter called *301 "Hevenor") both of La Grange, Illinois, are now and have for several years past been associated with said Reineck in the conduct of said business and the said Reineck therefore believes it to be desirable to make provision whereby said Lee and Hevenor may succeed to his interest in said company. * * * * *
ARTICLE ONE During Reineck's lifetime the trustee shall pay over all dividends received on said stock to Reineck and shall vote all of said shares or issue proxies to vote said shares in such manner and to such persons as Reineck shall direct. ARTICLE TWO Upon the death of Reineck the trustee shall set apart and hold for the use and benefit of Lee two-thirds of said stock and shall set apart and hold for the use and benefit of Hevenor one-third of said stock all upon the following trusts, terms and conditions: First: The said Lee and Hevenor shall have the right to purchase said stock set apart for their respective use and benefit, in the manner hereinafter provided, at the rate of Sixty dollars ($60.00) per share; provided however, that Reineck shall have and hereby expressly reserves the right to establish a new and different valuation of said stock for the purpose of purchase *302 herein provided from time to time by notice in writing delivered to said trustee. Second: The dividends paid upon the respective shares of said stock set apart as above provided, shall be received and applied by the trustee upon the purchase price of said respective shares as follows: (1) From the amount of such dividends the trustee shall first deduct interest upon the balance owing upon said purchase price computed at the rate of 5% per annum, compounded from the date to which said interest was last fully paid, to the date when the dividend is received. (2) The balance, if any, of any such dividends shall be applied upon the purchase price of said stock; provided however, that said Lee or Hevenor may pay any part of the purchase price together with interest as hereinabove provided, from sources other than said dividends. Third: The trustee shall cause to be transferred to Lee or Hevenor so many of such shares of stock as such payments may be sufficient to fully pay for from time to time. Fourth: In the event the dividends upon said stock are insufficient to pay the accrued interest upon the balance of the purchase price as hereinabove provided, for three successive years, then *303 the trustee may at its option terminate the rights to purchase hereinabove provided, by giving notice in writing thereof to said Lee and Hevenor. Within sixty (60) days thereafter said Lee or Hevenor shall have the right to purchase any shares to which they respectively had the right of purchase under the provisions hereof by paying to the trustee the balance owing thereon together with interest as hereinabove provided. In the event either said Lee or Hevenor shall fail to so purchase within said period, then their respective rights shall cease and determine and this agreement shall be of no further force and effect as to them respectively. Fifth: Either Lee or Hevenor may relinquish his rights hereunder at any time by giving notice in writing thereof to the trustee. Sixth: In the event any shares hereunder shall be no longer subject to the rights of said Lee or Hevenor, or of any successor, as hereinabove provided, then the said trustee shall have the power to sell all or any part of said stock for such price and upon such terms and conditions as the trustee shall deem advisable, provided however, that during the lifetime of Irene M. Reineck, wife of said Reineck, her consent to *304 such sale shall be first obtained, and after her death and during the lifetime of Reineck's daughter Mary F. Reineck, the consent of said daughter shall be first obtained. Seventh: In the event of the death of either Lee or Hevenor prior to the completion of the purchase of said stock as herein provided, all rights and obligations hereunder of such person so dying shall cease and determine and thereupon all shares of stock, theretofore paid for by such decedent and not yet transferred to him, shall be transferred and delivered to the personal representative of such deceased person or if he has no personal representative, then to his heirs. Upon any such death the survivor of said Lee or Hevenor shall have the right to substitute himself or any other person in the stead of said decedent and any person so substituted shall have the same rights hereunder as such decedent so far as is consistent with the provisions and purposes hereof. Eighth: In the event of the death of the survivor of Lee and Hevenor or upon the death of any person substituted by the survivor under the provisions of Paragraph Seventh of this Article Two, then the shares set apart to be sold to such survivor of said *305 other person and not paid for as herein provided shall be transferred to those who would then be entitled to share in a distribution under the provisions of Paragraph Tenth of this Article Two in the proportions therein provided, it being the intention hereof that all rights to purchase any such shares not paid for at the death of any such decedent shall terminate upon such death. Ninth: The Trustee, with the written consent of those entitled to purchase said stock under the provisions hereof and of such of the beneficiaries provided in Paragraph Tenth of this Article Two, as shall then be of legal age, may sell any stock held hereunder or any part hereof for such price and upon such terms and conditions as may be deemed advantageous, irrespective whether such price is more or less than the price provided herein. In the event of any such sale, or for any consolidation, merger, or liquidation of said company before the completion of the purchase of said stock as herein provided, the rights of Lee and Hevenor and of their successors shall thereupon cease and determine as to all stock not then fully paid for. Any such stock not then paid for, or the proceeds thereof in case of sale, *306 shall thereupon be distributed to those who would then be entitled to share in the distribution under the provisions of Paragraph Tenth of this Article Two. Tenth: All amounts collected by the trustee under this agreement shall, after the deduction of its reasonable charges and expenses hereunder, be distributed as follows: (1) To Irene M. Reineck, wife of Reineck, if she is then living, to hold in her sole and absolute right. (2) If said Irene M. Reineck is not living, then to Margaret F. Reineck, daughter of said Reineck, to hold in her sole and absolute right. (3) If neither said Irene M. Reineck nor Margaret F. Reineck are then living, then to the issue of said Irene M. Reineck per stirpes and not per capita. ARTICLE THREE In effectuating the purpose of this agreement the trustee upon the death of Reineck shall have the following powers and authority. First: The trustee shall have sole and absolute power to vote in person or by proxy shares of said stock which shall not have been delivered under the provisions hereof in accordance with its best judgment and discretion. Said trustee may however, in its discretion, accept the judgment of said Lee and Hevenor in *307 all matters arising in the conduct of said business and shall be wholly free from any and all liability whatsoever in accepting and acting upon the judgment or advice of said Lee and Hevenor in such matters. * * * * *
ARTICLE FOUR Said Reineck hereby expressly reserves the right to revoke this agreement at any time prior to his death by written notice to the trustee. The trustee shall notify said Lee and Hevenor of such revocation. The death of either Lee or Hevenor prior to the death of Reineck shall immediately terminate this agreement as to all parties in interest and render the same of no further force and effect. In the event of any such revocation the trustee shall immediately cause said shares of stock to be transferred back to Reineck. The trustee hereby accepts the trusts of this agreement declared and provided, and agrees to perform the same upon the terms and conditions herein set forth. The execution of this agreement by said Reineck shall be a revocation of an agreement heretofore executed by and between the parties hereto dated the 26th day of December 1929 pursuant to the provisions of Article Four thereof. The petitioner Irene M. Reineck is the widow of E. F. *308 Reineck, deceased. The petitioner Oak Park Trust & Savings Bank, a corporation organized and existing under the Banking Laws of the State of Illinois, is the trustee of the E. F. Reineck Trust, and duly qualified and acted as such trustee throughout. Petitioners Frederick M. Lee and Winfield S. Hevenor are individuals. Lee became associated with the business of E. F. Reineck, deceased, in 1911; Hevenor, a brother-in-law of decedent, became associated in 1914. On June 26, 1922, the business conducted by the decedent was incorporated under the name of Commercial Wall Paper Mill, Inc. Decedent, until his death, was the president and treasurer; Lee was vice president in charge of the production phase of the business and Hevenor was Secretary in charge of sales and the office administration. All three were directors and stockholders of said corporation. Prior to 1930 decedent held all the outstanding 200 shares of the preferred stock and approximately 90 per cent of the common shares; the remaining common shares were held by Lee and Hevenor. Prior to and at the time of his death the salary paid decedent by the corporation was $15,000 per annum. Lee and Hevenor were each paid $7,500 per *309 annum until 1932 when they each voluntarily reduced their salaries to $5,000, which amounts they received in 1932, 1933, 1934 and part of 1935. During 1935 the salary of each was increased to $6,500 per annum and subsequent to 1936 the salary of each was increased to $7,500 per annum. After the death of E. F. Reineck one Holland C. Pile, a representative of the trustee, was elected to the board of directors of the Commercial Wall Paper Mill, Inc., and served throughout. In September 1934, George A. Gaunt and Jack Horlock were elected directors, the latter serving throughout and the former serving until his resignation on June 30, 1938. From 1930 to June 30, 1934 the Commercial Wall Paper Mill, Inc., had outstanding 200 shares of preferred stock and 2,450 shares of common; from June 30, 1934 to December 31, 1938 it had outstanding 200 shares of preferred stock and 2,356 shares of common stock. The gross receipts by the trustee under the E. F. Reineck Trust for the years involved were: 1936
$20,862.50
1937
19,759.25
1938
32,260.00
During the year 1930 and particularly on December 18, 1930, the fair market value of the common stock of the Commercial Wall Paper Mill, Inc., *310 was not in excess of $60 per share. The fair market value of the common stock during the years in question was as follows: 1936 $140 per share
1937
145 per share
1938
150 per share
For approximately one year prior to his death on December 18, 1930, E. F. Reineck was largely confined to his home with a heart ailment. He left surviving him his wife, Irene M. Reineck, a petitioner here, and one daughter, Margaret F. Reineck. During the year 1930 and particularly on December 18, 1930, the Commercial Wall Paper Mill, Inc., was in financial difficulty, primarily due to the fact it was unable to meet matured obligations of approximately $32,000 because the Hanmond Bank, where most of its cash funds were deposited, had closed. To enable the said corporation to meet these obligations, Mrs. Reineck advanced $11,000 and Lee and Hevenor advanced together $11,000, and the corporation obtained an extension for the payment of the balance. In June 1936 Irene M. Reineck, petitioner in Docket No. 110776, filed a complaint in the Circuit Court of Cook County, Illinois, seeking to have the aforesaid agreement declared invalid and set aside on various grounds. The Oak Park Trust & Savings *311 Bank, as trustee, and petitioners Lee and Hevenor were made parties defendant and all filed answers. The matter was referred to a Master in Chancery who rendered a report setting forth his findings and conclusions. By a decree of the Circuit Court entered on June 26, 1939, on consent of all parties, the Court, inter alia, overruled all exceptions to the Master's Report and approved the same. The decree further found and adjudged that the trust agreement, dated January 10, 1930, was "at the time of its execution and has continued to be a valid and effectual agreement and that the trust created thereunder is valid and effectual according to law and according to its full tenor and import," and we adopt such finding. Immediately after the death of Reineck, the trustee set up on its books accounts receivable from Lee and Hevenor, respectively, and charged Lee thereon for 1,432 2/3 shares of Commercial stock at $60 per share and Hevenor for 716 1/3 shares at the same price. As and when dividends were declared and paid to the Trust by the Commercial Company on this stock, as well as when moneys were received directly from Lee and Hevenor for the stock, these accounts were first credited *312 with the unpaid interest from the date of Reineck's death and stock at $60 per share for any balance was delivered to Lee and Hevenor. In 1936, 1937 and 1938 Commercial declared and paid dividends on the stock thus held by the trustee in the respective amounts of $20,862.50, $19,759.25 and $32,260. The amounts thus received in 1936 and 1937 were, after deducting administration expenses, paid to petitioner Irene M. Reineck in the years when received. That for 1938 was withheld by the trustee because of the litigation involving her and the other parties in this proceeding but was paid to her in 1939, less administration expenses. All of the stock so charged by the Trust to the accounts of Lee and Hevenor beginning prior to 1936 was delivered by the Trust to Lee and Hevenor before July 1939. The books of the Trust record payment for the same as follows: Lee, $46,659.69 from his funds, directly, and $39,300.31 from dividends to the trust; Hevenor, $18,749.78 from his own funds, directly, and $24,230.22 from dividends to the trust. [Opinion] It is not seriously contended otherwise and we have found that the petitioner E. F. Reineck Trust was, during the tax years, a valid trust. *313 The purpose of section 161 of the Revenue Act of 1936, controlling here, was to tax the whole income of all trust estates unless definitely exempted, no claim of which is made here. But, as such income it is taxable only once. . Corpus, a prerequisite of any trust, of course is not income and its receipt is therefore not taxable. The intention of the creator of the Trust is decisive. That intent is a fact to be ascertained from the trust instrument read as an entirety. So read, we have no doubt of what Reineck intended to and did accomplish by the Trust. That intention is confirmed by the circumstances surrounding the execution of the Trust. We think no one will gainsay the fact that one's family is the natural object of his bounty. In accomplishing that natural result, one may think it necessary to grant an incidental benefit to another. Cf. . That, we think, is basically the situation here. The primary consideration of Reineck in creating the present Trust was that his wife, petitioner assured - so far as possible - that they would receive the value of *314 his Commercial stock. Unless the stock was sold to Lee and Hevenor under their option, the Trust could not sell it without the consent of the wife or, if she were dead, the daughter. That stock, subject to an irrevocable option to buy in Lee and Hevenor, effective for three years, was the corpus of the Trust. As and when that option was exercised and the stock purchased, the proceeds, except interest in an agreed amount on the unpaid balance which petitioner Irene M. Reineck concedes is taxable to her under section 162 (b), became corpus and were distributed as such to her, the widow, under the trust. See particularly Article Two, paragraph "Tenth" of the Trust. Respondent erred in taxing them to her as income. Revenue Act of 1936, section 161. Since a trust can have but one corpus and that corpus was, as we have held, distributed to petitioner Irene M. Reineck, the other distributions, if any except the conceded interest income, could not have been corpus. The Commercial stock on which the dividends involved here were paid then belonged to the Trust. . The dividends were income to it. See *315 ; affd., . The segregated Commercial stock, during the tax years, was subject to the Lee and Hevenor option to purchase. The option was exercised when the stock was sold by the Trust to Lee and Hevenor. This occurred when the dividends on the stock were paid to the Trust and, under its terms, were concurrently constructively distributed as trust income to Lee and Hevenor by a credit on the books of the Trust against interest and purchase price of the stock and the stock thus paid for was delivered to Lee and Hevenor. See . Lee and Hevenor were employed by the Commercial Company and not the decedent. That company was a separate entity which cannot be disregarded here. . The Trust did not purport to compensate them for anything. Cf. , and cases there cited. They were given an option, the value of which is not in question. Its exercise depended *316 upon no service, past, present or future, to be rendered by either Lee or Hevenor to anybody. Cf. Reineck clearly did not intend that Lee and Hevenor should have the stock as a gift. The stock in the form of proceeds from its sale was given to his wife, petitioner Irene M. Reineck. Reineck intended that Lee and Hevenor should have an option to purchase it and to help them do so he made them beneficiaries of the Trust income if they exercised the option. They bought all the stock and used their "other sources" of income to pay for approximately half. Article Two of the Trust agreement leaves no doubt of the decedent's intention. In paragraph "First" of that Article it is provided, inter alia, "The said Lee and Hevenor shall have the right to purchase said stock set apart for their respective use and benefit, in the manner hereinafter provided, at the rate of Sixty Dollars ($60.00) per share * * *": then follow the two methods by which the purchase may be made, i.e., the income of the Trust in the form of dividends paid to it on the respective shares of stock and from other sources. The trustee is then directed to transfer to *317 them "so many of such shares of stock as such payments may be sufficient to fully pay for from time to time" after deducting interest on the unpaid balance. The wording of these provisions is in pointed contrast to that in the "Tenth" paragraph of Article Two providing, inter alia, that "All amounts collected by the trustee under this agreement shall, after the deduction of its reasonable charges and expenses hereunder, be distributed as follows: "To Irene M. Reineck, wife of Reineck, if she is then living, to hold in her sole and absolute right * * *." It is our conclusion that Lee and Hevenor, having exercised their option to buy the stock, under the Trust became entitled to and did receive the distribution of the Trust income as and when received from the corporation in the form of dividends. It follows that they are taxable with the same. Section 162(b), supra. No other result would be consistent with the intention of the decedent. , Cf. , affirming . From the foregoing *318 it necessarily follows, for present purposes, the Trust was in receipt of no taxable income during the tax year in dispute except that which was currently distributed or distributable and is here taxed to the recipients. Therefore, the respondent erred in taxing the Trust with the receipt of any income in that year. Section 162(b), Revenue Act of 1936. . Decisions will be entered under Rule 50.